# 22-11128

# United States Court of Appeals
*for the*
# Eleventh Circuit

———————————

CAROLYN NOLEN, on behalf of herself and all others similarly situated,
WINDY KELLEY, on behalf of herself and all others similarly situated, CARA
KELLEY, on behalf of herself and all others similarly situated, PAULA LITTON,
on behalf of herself and all others similarly situated,

*Plaintiffs/Appellants,*

– v. –

WYNDHAM VACATION RESORTS, INC., FAIRSHARE VACATION
OWNERS ASSOCIATION, RCI LLC,

*Defendants/Appellees.*

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO: 6:20-cv-00330-PGB-EJK
(Hon. Paul G. Byron)

## INITIAL BRIEF OF APPELLANTS (PUBLIC)

JAMES M. TERRELL
RODNEY E. MILLER
METHVIN TERRELL YANCEY
STEPHENS & MILLER, PC
2201 Arlington Avenue S.
Birmingham, Alabama 35205
(205) 939-0199

BRADFORD D. BARRON
THE BARRON LAW FIRM, PLLC
P.O. Box 369
Claremore, Oklahoma 74017
(918) 341-8402

JOHN YANCHUNIS
PATRICK A. BARTHLE, II
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 6th Floor
Tampa, Florida 33602
(813) 223-5505

*Counsel for Appellants*

Carolyn Nolen, et al v. Wyndham Vacation Resorts, Inc., et al., 22-11128

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-2(c), Appellants Carolyn Nolen, Windy Kelley, Cara Kelley, and Paula Litton respectfully submit the following Certificate of Interested Persons:

1.    Allen, D. Matthew (Counsel for Appellee)

2.    Barron, Bradford D.  (Counsel for Appellants)

3.    Barthle, Patrick A.  (Counsel for Appellants)

4.    Barron Law Firm, PLLC,  (Counsel for Appellants)

5.    Byron, Honorable Paul G. (United States District Judge for the Middle District of Florida)

6.    Carlton Fields, P.A. (Counsel for Appellee)

7.    Coutroulis, Chris S. (Counsel for Appellee)

8.    Fairshare Vacation Owners Association (Appellee)

9.    Fairshare Vacation Plan Use Management Trust (Fairshare Vacation Owners Association is the Trustee of the Fairshare Vacation Plan Use Management Trust)

10.    Foell, Nathaniel G. (Counsel for Appellee)

11.    Kelley, Cara (Appellant)

12.    Kelley, Windy (Appellant)

13.    Lang, Jr., Joseph H. (Counsel for Appellee)

14.    Litton, Paula (Appellant)

Carolyn Nolen, et al v. Wyndham Vacation Resorts, Inc., et al., 22-11128

15.    McCoy, Kevin P. (Counsel for Appellee)

16.    Methvin, Terrell, Yancey, Stephens & Miller, P.C. (Counsel for Appellants)

17.    Miller, Rodney E. (Counsel for Appellants)

18.    Morgan & Morgan Complex Litigation Group (Counsel for Appellants)

19.    Nolen, Carolyn (Appellant)

20.    Terrell, James M. (Counsel for Appellants)

21.    Vanguard Group, Inc., The (10% or more owner of Wyndham Destinations, Inc.)

22.    Wyndham Destinations, Inc. (Parent of Wyndham Vacation Resorts, Inc. and publicly traded on the New York Stock Exchange under stock symbol WYND)

23.    Wyndham Destination Network, LLC (Subsidiary of Wyndham Destinations, Inc.)

24.    Wyndham Vacation Ownership, Inc. (Parent of Wyndham Vacation Resorts, Inc. and subsidiary of Wyndham Destinations, Inc.)

25.    Wyndham Vacation Resorts, Inc. (Wyndham Vacation Resorts, Inc. is the Plan Manager of the Fairshare Vacation Plan Use Management Trust)

26.    Yanchunis, John A. (Counsel for Appellants)

## STATEMENT REGARDING ORAL ARGUMENT

Appellants do not believe that oral argument in necessary in this case, as the issues involved are fairly straightforward and uncomplicated.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ....................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF AUTHORITIES ...............................................................................iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE
    JURISDICTION ...........................................................................................1

STATEMENT OF THE ISSUES...........................................................................2

STATEMENT OF THE CASE...............................................................................2

    I.     Factual Background...........................................................................3

           A.    WVR as Plan Manager.................................................................5

           B.    Fund Balance................................................................................7

    II.    Procedural Background .....................................................................8

           A.    The *Embree* Case ........................................................................8

           B.    The *Nolen* Case ...........................................................................9

           C.    The Motion to Dismiss Order ....................................................10

           D.    Appellants' Second Amended Complaint, the Striking
                  Thereof, and the Amended Motion for Class
                  Certification .............................................................................11

           E.    Fairshare's Motion for Summary Judgment .............................15

    III.    Standard of Review .......................................................................16

SUMMARY OF THE ARGUMENT ....................................................................17

ARGUMENT .......................................................................................................18

    I.     The District Court Erred in Dismissing Counts 2, 3, 4 and 5
          of Appellants' Amended Complaint ................................................18

           A.    Error in Dismissing Counts 2, 3 and 4.....................................18

ii

1.    The district court misinterpreted Ark. Code Ann. § 28-73-802................................................................18

     a.    The district court's interpretation of § 802(b) ignores other provisions of the Trust Code. ...........................................22

     b.    The district court's interpretation of § 802(b) is contrary to established law. .................23

B.    The District Court Disregarded the Allegations in Count 5 ....................................................................27

II.    The District Court Erred in *Sua Sponte* Striking the Second Amended Complaint.............................................29

A.    Neither the Cited Cases nor Rule 12(f) Supports the Striking Order. ..........................................30

B.    Alternatively, Dismissal Under Rule 41 Would Be Improper..........................................................33

C.    Count 5 of the SAC Did Not Violate the District Court's Order and Counts 1 and 9 Should Not Have Been Stricken in Total. ............................................36

III.    The District Court Erred in Granting Summary Judgment.................38

A.    The District Court Expressly Refused to Consider Evidence..........................................................39

     1.    Evidence regarding due diligence ..................................40

     2.    Evidence regarding surplus Trust Fund balance ............43

B.    Precedent and Policy Dictated that Appellants' Evidence Must be Considered .................................47

CONCLUSION ........................................................................55

# TABLE OF CITATIONS

**Page(s)**

**Cases:**

*Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*,
    306 F.2d 862 (5th Cir. 1962) ...........................................................................31

*Brown & Williamson Tobacco Corp. v. United States*,
    201 F.2d 819 (6th Cir. 1953) ..........................................................................31

*Buckman v. Morris*,
    736 F. App'x. 852 (11th Cir. 2018)..................................................................38

*C.S. v. Wyndham Hotels & Resorts, Inc.*,
    538 F. Supp. 3d 1284 (M.D. Fla. 2021) ..........................................................30

*California Diversified Promotions, Inc. v. Musick*,
    505 F.2d 278 (9th Cir.1974) ............................................................................33

*Cohen v. Carnival Cruise Lines, Inc.*,
    782 F.2d 923 (11th Cir. 1986) .........................................................................34

*Dang v. Honda Motor Co., Ltd*,
    No. 6:14-CV-2071-ORL-40DAB, 2015 WL 12830489
    (M.D. Fla. Mar. 25, 2015) ......................................................................... 31, 32

*Dantzler v. PNC Bank*,
    946 F. Supp. 2d 1344 (S.D. Fla. 2013).................................................. *passim*

*Dzwonkowski v. Dzwonkowski*,
    298 F. App'x 885 (11th Cir. 2008)..................................................................15

*Fisher v. Boling*,
    575 S.W.3d 592 (Ark. Ct. App. 2019)............................................................39

*Gary S Logsdon v. Kenneth H Davis & Sherry R Mansfield*,
    No. 5:20-CV-335-OC-40PRL, 2020 WL 13358527
    (M.D. Fla. Oct. 16, 2020) ...............................................................................31

*Gibson v. JetBlue Airways Corp.*,
    20-10943, 2021 WL 5368056 (11th Cir. Nov. 18, 2021)....................... 38, 40

*Gilmour v. Gates, McDonald & Co.,*
    382 F.3d 1312 (11th Cir. 2004) ....................................................... 46, 47, 49

*Gulf Group Holdings, Inc. v. Coast Asset Mgmt. Corp.*,
    516 F. Supp. 2d ...................................................................................... 50, 51

*Heyman v. Heyman*,
    33 N.Y.S.2d 235 (N.Y. Sup. Ct. 1942)......................................................26

*Hodges v. Sch. Bd. Of Orange County., Fla.*,
    No. 6:11-cv-135, 2012 WL 5051923 (M.D. Fla. Oct. 18, 2012) 46, 48, 49, 50

*Hurlbert v. St. Mary's Health Care Sys., Inc.,*
    439 F.3d 1286 (11th Cir. 2006) ............................................................ 47, 49

*Hutchings v. Fed. Ins. Co.*,
    No. 6:08-CV-305-ORL-19KR, 2008 WL 4186994
    (M.D. Fla. Sept. 8, 2008) ...............................................................................30

*Ivory v. Warden, Governor of Alabama*,
    600 F. App'x. 670 (11th Cir. 2015)................................................................38

*Jackson v. Grupo Indus. Hotelero, S.A.*,
    No. 07–22046–CIV, 2008 WL 4648999 (S.D. Fla. Oct. 20, 2008) .............32

*Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.,*
    695 F.2d 524 (11th Cir. 1983) ......................................................................33

*Johnson v. Potter*,
    732 F. Supp. 2d 1264 (M.D. Fla. 2010) ................................................. 46, 50

*Kilgo v. Ricks*,
    983 F.2d 189 (11th Cir. 1993) ......................................................................34

*Kuenzig v. Kraft Global Foods, Inc.,*
    2012 WL 366927 (M.D. Fla. 2012)...............................................................29

*Lindley v. City of Birmingham, Ala.,*
    452 F. App'x. 878 (11th Cir. 2011)...............................................................33

*Matter of GNB III Trust*,
    574 S.W.3d 159 (Ark. Ct. App. 2019)..........................................................22

*Renz v. Beeman*,
    589 F.2d 735 (2d Cir. 1978) .........................................................................26

*Rios-Campbell v. U.S. Dep't of Com.*,
    927 F.3d 21 (1st Cir. 2019)............................................................53

*Robbins v. Oubre*,
    No. 5:13-CV-348 CAR, 2014 WL 4070851
    (M.D. Ga. Aug. 15, 2014)..............................................................50

*Roberts v. Florida Power & Light Co.*,
    146 F.3d 1305 (11th Cir. 1998) .....................................................15

*Rodriguez v. Ritchey*,
    556 F.2d 1185 (5th Cir.1977) ........................................................51

*Roenne v. Miller*,
    475 P.3d 708 (Kan. Ct. App. 2020)........................... 24, 25, 26, 41

*Schenone v. Zimmer Holdings, Inc.*,
    No. 3:12-CV-1046-J-39MCR, 2014 WL 12576790
    (M.D. Fla. Aug. 8, 2014) ...............................................................50

*Strickland v. Norfolk S. Ry. Co.*,
    692 F.3d 1151 (11th Cir. 2012) ............................................ *passim*

*The Cincinnati Ins. Co. v. Cochran*,
    05-16867, 2006 WL 4495335 (11th Cir. Dec. 27, 2006) ..............29

*Tippens v. Celotex Corp.*,
    805 F.2d 949 (11th Cir. 1986) .......................................................38

*Watkins v. Capital City Bank*,
    711 F. App'x. 591 (11th Cir. 2018)................................................38

*Williams v. Delray Auto Mall, Inc.*,
    289 F.R.D. 697 (S.D. Fla. 2013).....................................................30

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 1332(d) ...........................................................................1

Ark. Code Ann. § 28-73-105(b)(2) ............................................ 22, 23

Ark. Code Ann. § 28-73-105(b)(3) ...................................................22

Ark. Code Ann. § 28-73-106 .............................................................24

Ark. Code Ann. § 28-73-802 ............................................................ *passim*

Ark. Code Ann. § 28-73-802(a) ...............................................................17

Ark. Code Ann. § 28-73-802(b) ..................................................... *passim*

Ark. Code Ann. § 28-73-802(b)(1) ........................................ 22, 24, 25

Ark. Code Ann. § 28-73-802(b)(1)–(5) ....................................................19

Ark. Code Ann. § 28-73-802(b)(4) ...........................................................24

Ark. Code Ann. § 28-73-802(c) ........................................... 10, 19, 20

Ark. Code Ann. § 28-73-802(c)(4) ...........................................................18

Ark. Code Ann. § 28-73-814(a) .................................................................23

Ark. Code Ann. § 28-73-1003 ...................................................................27

Ark. Code Ann. § 28-73-1009 ...................................................................19

Fed. R. App. P. 4 ........................................................................................1

Fed. R. App. P. 26.1 ...................................................................................1

Fed. R. Civ. P. 12(b)(6) ............................................................................31

Fed. R. Civ. P. 12(f) ..................................................... 29, 31, 32

Fed. R. Civ. P. 15(a) .................................................................................48

Fed. R. Civ. P. 15(b) .................................................................................52

Fed. R. Civ. P. 41 .....................................................................................29

Restatement (Third) of Trusts § 78 (2007) ................................ 24, 25, 42

Rule 15(b) ..................................................................................................51

Uniform Trust Code § 105 ........................................................................26

Uniform Trust Code § 106 ........................................................................23

Uniform Trust Code § 802 ............................................................... 24, 26

Uniform Trust Code § 814 ........................................................................26

Black's Law Dictionary (11th ed. 2019) ..................................................44

## STATEMENT OF SUBJECT-MATTER AND
## APPELLATE JURISDICTION

The district court has subject matter and diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), as this is a class action wherein the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Respondents.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as this is an appeal from a several final decisions of the district court, specifically the district court's Order granting in part and denying in part Defendant/Appellee's Motion to Dismiss, the district court's Order striking Plaintiffs/Appellants' Second Amended Complaint, Order granting Defendant/Appellee's Motion for Summary Judgment.

The district court entered the Order granting the Motion for Summary Judgment on March 10, 2022. Appellants timely filed their Notice of Appeal on April 7, 2022. *See* Fed. R. App. P. 4.

1

## STATEMENT OF THE ISSUES

1. Whether the district court erred in granting Fairshare's motion to dismiss to the extent it dismissed Appellants' claims for breaches of the Arkansas Trust Code?

2. Whether the district court erred in striking Appellants' Second Amended Complaint?

3. Whether the district court erred in granting Fairshare's motion for summary judgment and dismissing Appellants' claims for declaratory judgment and breach of fiduciary duty?

## STATEMENT OF THE CASE

This is a certified class action involving approximately one million class members, to whom notice was sent and the opt-out period expired.[1] Just over a month after the exclusion period expired, the district court entered summary judgment in favor of Defendant-Appellee, Fairshare Vacation Owners Association ("Fairshare"). That ruling, along with two others that directly led to it—the district court's March 18, 2021, Order granting, in part, and denying, in part, Fairshare's

---

[1] *See, e.g.*, Doc. 141-1 (detailing notice efforts to Class List containing 963,598 records, and expiration of opt-out period on Jan. 17, 2022).

motion to dismiss (Doc. 67)[2]; and its April 9, 2021, order striking the Second Amended Complaint (Doc. 76)—were infected with error.  This appeal follows.

## I.    Factual Background

This case involves a timeshare exchange program. Consumers, such as Appellants and Class Members, purchased timeshare interests from Wyndham Vacation Resorts, Inc. ("WVR")[3] which are then placed into the Fairshare Vacation Plan Use Management Trust Agreement (the "Trust" or "Trust Agreement"). Defendant/Appellee Fairshare is the named Trustee of the Trust.[4]

Once subject to the Trust—also known as Club Wyndham Plus or the Fairshare Program—timeshare purchasers can use their points to book stays at other resort locations affiliated with the Fairshare Program, rather than just at their home resort.

---

[2] As required by 11th Cir. R. 28-5, reference to the record in this brief are to the ECF document number in the district court and to the page number in the heading generated by the ECF system, except where reference can be made to a specific paragraph.

[3] These timeshare interests are typically represented in the form of points.

[4] Doc. 103, Joint Stmt. of Undisputed Facts, at ¶ 4; *see also* Doc. 45, Amended Complaint, at ¶¶ 5, 7. The Trust Agreement can be found at Doc. 82-1 at pp. 224–259.

As Trustee, Fairshare has extensive duties and obligations, as set out, *inter alia*, in § 6.01 of the Trust,[5] and in the Arkansas Trust Code.[6] Yet, it is undisputed that Fairshare has not taken any steps to understand and comply with its obligations as a trustee under Arkansas Trust law.[7] Fairshare does not have any employees, offices, or other property or assets.[8]  Rather, Fairshare is operated by a Board of Directors, all of whom, throughout the class period, have exclusively been employees of Wyndham Vacation Ownership ("WVO")[9] and/or its subsidiary WVR.[10]

Accordingly, Fairshare can "not fulfil its duties as Trustee without hiring WVR or another Plan Manager."[11]

---

[5] Doc. 82-1 at 236–238.

[6] The Trust Agreement is governed by Arkansas law. *See* Trust Agreement § 2.03 (Doc. 82-1 at 238); Fairshare's Responses to First Request for Admissions (hereinafter RFA Responses), Doc. 82-1 at 296–318, Response No. 5 (admitting Trust is governed by Arkansas law), found at 82-1 at 297.

[7] Doc. 82-1, Deposition Transcript of Jodi Rogers, at 34:9-15.

[8] Doc. 103 at ¶¶ 47–48; Doc. 82-1 at 25:16–24, 29:2–4;

[9] Doc. 103 at ¶ 49; Doc. 82-1 at 30:18.

[10] Doc. 82-1 at 25:22–29:1, 30:24–31:4, 119:7–12 (explaining Fairshare's operation by a board of directors and stating that all known Fairshare Board members have been employees of WVO). *But see* RFA Responses, No. 21 (Doc. 82-1 at 306) (admitting that "[t]he board of directors of the Trustee is composed entirely of employees of WVR.").

[11] Doc. 103 at ¶ 53.

4

**A. WVR as Plan Manager**

WVR is the developer of the resorts, a Beneficiary under the Trust, a Member of the Trust[12] and, most notably for purposes here, serves as the Plan Manager for the Trust.[13] Through the selection of WVR as its Plan Manager, Fairshare delegated its duties as Trustee to WVR under §§ 6.02 and 6.03 of the Trust Agreement,[14] and, pursuant to the Management Agreement, which is incorporated by reference into the Trust,[15] WVR has "all the powers and authority, and limitations thereon, which the Trustee has, pursuant to the Trust Agreement . . . ."[16]

The Program Fee is the amount timeshare owners pay yearly to be a part of the Fairshare Program, sometimes referred to as maintenance fees[17]—it is these fees that Appellants contend are excessive. The Management Agreement entitles WVR to compensation of "five percent (5%) of the Program Fees, special and other assessments . . . collected from Members . . . ."[18] Moreover, Fairshare is to reimburse WVR for "all costs and expenses (including without limitation, a reasonable profit at the prevailing market rate) arising from" various identified

---

[12] Doc. 103 at ¶¶ 8–9; Doc. 82-1 at 41:16–43:18; Trust Agreement, p. 1, 3, and § 3.04 (Doc. 82-1 at 225, 227, 231).

[13] Doc. 103 at ¶¶ 6, 17; Trust Agreement, § 6.03 (Doc. 82-1 at 238-239).

[14] Doc. 82-1 at 36:13–39:24, 43:24–47:23.

[15] Doc. 103 at ¶ 15.

[16] Doc. 103 at ¶ 52; Management Agreement § 5.1(a), found at Doc. 82-1 at 261.

[17] Doc. 103 at ¶ 11; Doc. 82-1 at 64:14–22, 128:24–131:4.

[18] Management Agreement § 6.1 (Doc. 82-1 at 264); Doc. 103 at ¶ 55.

5

matters encompassing the full spectrum of management, operation, and maintenance of the Fairshare timeshare program.[19]

The Management Agreement results in ▮▮▮▮▮▮▮▮▮▮ in yearly payments to WVR and other Wyndham subsidiaries. Specifically, Fairshare's annual audited financial statements each contain a "Note 3" section on "Related Party Transactions," which states (with minor variation):



[20]

Each statement then sets out the total amounts Fairshare paid to WVR and "other Wyndham subsidiaries" yearly, which amounts were:

- 2020: ▮▮▮
- 2019: ▮▮▮
- 2018: ▮▮▮
- 2017: ▮▮▮
- 2016: ▮▮▮
- 2015: ▮▮▮
- 2014: ▮▮▮
- 2013: ▮▮▮
- 2012: ▮▮▮

---

[19] Management Agreement § 6.2(a) (Doc. 82-1 at 264); Doc. 103 at ¶ 56.
[20] Doc. 103 at ¶ 57; Doc. 82-1 at 268, 2019 Fairshare Audited Financial Statement at Bates No. 003138, (contained in Doc. S-92); Doc. 82-1 at 269–271, Rogers Depo. Exhibits 6–8 (contained in Doc. S-92).

- 2011: ████████ [21]

Yet, despite these staggering yearly payments, discovery taken after the filing of the Amended Complaint in this case, revealed that Fairshare performed no initial or ongoing analysis or due diligence regarding the selection of WVR as the Plan Manager, the amount of the Management Fee paid to WVR, WVR's continuing services and rates, the amounts being charged by WVR for expenses, nor whether other independent third-parties could provide similar services for less cost. [22] Nor does Fairshare solicit bids or perform other comparative analysis of proposed budgets submitted to it when determining the yearly Program Fee amount—a Program Fee amount that has never gone down during approximately the last decade. [23] And this is despite (or, more likely, because of) the fact that solely WVR/WVO employees have ever sat on Fairshare's Board.

## B. Fund Balance

Hand-in-hand with the yearly increasing payments to WVR, the audited financial statements also establish that Fairshare accumulated a substantial yearly Fund Balance and cash surplus. Specifically:

---

[21] Doc. 105 at ¶ 6.
[22] Doc. 105 at ¶ 7.
[23] Doc. 105 at ¶ 8.

| Year | End of Year Fund Balance | End of Year Cash Surplus |
|------|--------------------------|--------------------------|
| 2020 | ███████ | ███████ |
| 2019 | ██████ | ██████ |
| 2018 | ██████ | ██████ |
| 2017 | ██████ | ██████ |
| 2016 | ██████ | ███████ |
| 2015 | ██████ | ██████ |
| 2014 | ██████ | ██████ |
| 2013 | ██████ | ██████ |
| 2012 | ██████ | █████ |
| 2011 | ██████ | ██████[24] |

## II.    Procedural Background

### A. The *Embree* Case

This is the second case concerning, generally, the claims and issues in dispute here. In the first, *Embree v. Wyndham Worldwide Corp. et al.,* No. 6:16-cv-928, (M.D. Fla.) ("*Embree*"), a substantive determination regarding the viability of the claims was never received. Rather, the complaints were all met with *seriatim*

---

[24] Doc. 105 at ¶ 9.

motions to dismiss asserting shotgun pleading arguments, which the district court accepted, and this Court ultimately affirmed. *See Embree*, Doc. 149.

### B. The *Nolen* Case

Following affirmance of dismissal of *Embree*, this case was filed on February 25, 2020. Doc. 1. And, on September 10, 2020, it too was dismissed as a shotgun pleading. Doc. 42. On October 8, 2020, Appellants filed their Amended and Restated Complaint, ("Amended Complaint") (Doc. 45). The Amended Complaint alleged claims solely against Fairshare, thereby removing all other putative defendants and any potential shotgun-pleading related arguments.

On November 5, 2020, Fairshare filed its Second Motion to Dismiss. Doc. 48. Appellants filed their opposition (Doc. 49), and Fairshare its reply (Doc. 52).

As of December 2020, despite ongoing litigation in this and the *Embree* case since January 2016, Appellants had not received a substantive determination regarding the viability of their claims or theories, yet faced a class certification expert disclosure deadline of January 1, 2021 and a class certification motion deadline of February 12, 2021. Accordingly, Appellants sought to extend those deadlines pending a decision on the motion to dismiss, in order to avoid precisely the inefficiencies plaintiff had been subject to in *Embree*—repeated full briefing of class certification that was to become moot upon entry of an order on the motion to

9

dismiss. *See* Doc. 53. The district court denied that *unopposed* motion, just one day later. *See* Doc. 55.

Thus, on February 12, 2021, Appellants filed their initial Motion for Class Certification without any substantive guidance from the Court as to its view of the claims. *See* Doc. 62. Therein, Appellants explained that, among other things, the evidence gathered during discovery supporting their breach of fiduciary duty claims included (1) Fairshare's failure to perform "ongoing analysis or due diligence regarding the selection of WVR as the Plan Manager, WVR's continuing services and rates, the amounts being charged by WVR for expenses, or whether other independent third-parties could provide similar services for less cost"; (2) WVR's billing for "VIP Program" expenses, and Fairshare's payment for same, expenses that were expressly excluded from reimbursement eligibility under the pertinent agreements; and (3) Fairshare's failure to abide by its own Bylaws which require, for any year in which there is a Fund Balance, that a vote be held to determine whether to refund those excess funds, as no such vote had ever been held, despite yearly surpluses existing for nearly a decade. Doc. 62 at 5–8.

### C. The Motion to Dismiss Order

On March 18, 2021, the district court entered its Order granting in part and denying in part Fairshare's Motion to Dismiss, indicating for the first time in some five years of litigation its view of the viability of the claims. *See* Doc. 67 (hereinafter

"Motion to Dismiss Order"). Concurrently therewith—as Appellants had tried to avoid—the court also denied as moot the initial Motion for Class Certification. *See* Doc. 68.

In its Order the district court dismissed all of Appellants' Arkansas Trust Code related claims, finding that, (1) for Counts 2–4, allegations of transactions with related entities alone was insufficient to state a claim under Ark. Code § 28-73-802(c), but rather must also allege such related party transactions also fall outside the exceptions in § 28-73-802(b); and (2) for Count 5, the mere maintenance of a Trust Fund Balance "does not amount to profit to Defendant." *See* Doc. 67 at 4–8.

The district court's Order permitted the breach of fiduciary duty claim to proceed, finding that:

> Plaintiffs allege a laundry list of supposed breaches of fiduciary duties with "an affiliated entity." Plaintiffs allege that Defendant's Board of Directors "is composed solely of high ranking WVR executives," and that "these WVR executives control the activity and decision-making authority of the [Defendant]."
>
> At this early stage of litigation, these allegations—viewed in light most favorable to Plaintiffs—meet the criteria of a well-pleaded complaint.

Doc. 67 at 9–10 (internal citations omitted).

### D. Appellants' Second Amended Complaint, the Striking Thereof, and the Amended Motion for Class Certification

In the Motion to Dismiss Order, the Court held:

> Therefore, in order to state a cause of action under the Arkansas Trust Code § 28-73-802, Plaintiffs must allege the elements, which include the conditions set forth in Subsection 802(b). Plaintiffs wholly fail to allege that the complained of transaction: (1) was not authorized by the terms of the trust; (2) was not approved by a court; (3) that the beneficiaries did not commence a judicial proceeding within the time allowed; (4) that the beneficiaries did not consent to the trustee's conduct, ratified the transaction, or release the trustee; or (5) that the transaction did not involve a contract entered into or claim acquired by the trustee before the person became or contemplated becoming a trustee.

Doc. 67 at 7. The Court permitted Appellants to file a Second Amended Complaint to allege what the Court considered the prerequisite conditions of § 802(b).

At the time the district court entered its Motion to Dismiss Order, the parties had conducted extensive discovery and completed all briefing on class certification. As a result of the discovery process, Appellants were in possession of facts they did not have at the time the Amended Complaint was filed. Armed with additional facts, Appellants timely filed their Second Amended Complaint ("SAC") on April 1, 2021 (Doc. 69) to address the concerns raised by the district court's Order.

At the same time, the parties agreed that a Rule 16 status conference would be beneficial in light of the case's procedural posture. On April 1, 2021, Appellants requested a status conference. *See* Doc. 70. Fairshare responded by agreeing that addressing the deadlines in the original Scheduling Order was necessary. *See* Doc. 71.

12

Prior to the hearing the parties submitted a Proposed Amended Case Management and Scheduling Order (Doc. 74). Significantly, the parties agreed on all proposed deadlines, except one. On April 8, 2021, the Court held the Rule 16 Status Conference.

At the Status Conference the district court, for the first time, expressed concern that the SAC exceeded the authority granted in the Motion to Dismiss Order because it added new facts and causes of action. Importantly, Fairshare had not filed a motion to strike the SAC. Appellants had no warning that the district court intended the Rule 16 Status Conference to be focused on a substantive discussion regarding the scope of the SAC. Despite no motion to strike being before it, the day following the Status Conference the district court *sua sponte* struck the SAC, finding:

> [T]he Court has *sua sponte* reviewed Plaintiffs' Second Amended Class Action Complaint and finds that the causes of action set forth in the Second Amended Class Action Complaint substantially exceed the authority to replead that was granted by the Court in its Order granting Defendant's Motion to Dismiss. . . . Upon due consideration . . . the Second Amended Class Action Complaint is stricken.

Doc. 76 at 1 (hereinafter "Striking Order").

In accord with the Striking Order, Appellants filed an amended class certification motion (Doc. 82) based solely upon Counts 1 and 6 of the Amended Complaint. Notably, Appellants described how evidence uncovered during discovery concerning the lack of due diligence and the like, which the district court

had taken issue with as part of the SAC, remained relevant to the breach of fiduciary duty claim that persisted. *See* Doc. 82 at 14–15, 19, 21, 23–24.

Specifically, Appellants argued there that Fairshare made ███████████ of dollars in yearly payments to WVR and other Wyndham related entities without any "initial or ongoing analysis or due diligence," nor inquiry into "whether other independent third-parties could provide similar services for less cost," in violation of its fiduciary duties, (Doc. 82 at 5–7); and that Fairshare maintained a ███████████ yearly Fund Balance and there "is no proper basis for Defendant's failure to return this surplus to the beneficiaries of the Trust and Defendant's failure to do so [also] constitutes a breach of its fiduciary duty," (*id*. at 7–8).

On July 12, 2021, the district court entered an order certifying the class. *See* Doc. 95. Notably, it certified the claims as framed by Appellants:

> While Plaintiffs' current Motion contains language that does not appear in the Amended Complaint, the Court understands that class certification motions are driven by the claims pled. . . . .
>
> Plaintiffs maintain that the existence of the common question of "whether [Defendant] violated its fiduciary duties by engaging in transactions with a related entity, and in its handling of the Fund Balance" satisfies this [commonality] element…. The Court finds that Plaintiffs have satisfied the commonality requirement. The question of whether Fairshare violated its fiduciary duties by engaging in the *specific* acts Plaintiffs reference is

common to all putative class members and "capable of classwide resolution."

*Id.* at 5, 9 (citations omitted).

### E. Fairshare's Motion for Summary Judgment

Meanwhile, Fairshare filed its Motion for Summary Judgement, which had as its principal argument that the Motion to Dismiss Order and Striking Order compelled entry of summary judgment. *See* Doc. 94 at 12–13. Specifically, Fairshare argued:

> Putting those findings together, it is manifest that summary judgment should be granted in favor of Fairshare on Count 6. Count 6 relies on Counts 2-5, and Counts 2-5 are no longer in this case nor were they viable as pled. Moreover, Plaintiffs cannot save Count 6 by appealing to the "new unpled theories of their case" they attempted to advance in the Second Amended Complaint that the Court struck. (*Id.* at 9). It follows that Count 6 cannot survive summary judgment.

*Id.* at 14.

The district court chiefly adopted that argument. It recounted at length its Striking Order, (Doc. 143 at 8 n.2), and, in three separate footnotes, articulated that it was "refus[ing] to entertain evidence related to due diligence," and would "not consider" evidence concerning Fairshare's Bylaws. Doc. 143 at 14 n.8, 19 n.11, 20 n.12.

15

Notably, the district court did not analyze this evidence and find it immaterial or otherwise wanting or prejudicial in some way, rather, solely because those facts had been used in the SAC to allege certain other claims, claims that the court had stricken, the district court chose to ***expressly ignore*** that evidence as it related to the claims that still persisted at summary judgement.

Having disregarded some of Appellants' best evidence the district court, not surprisingly, granted summary judgment in Fairshare's favor.

## III.    Standard of Review

This Court conducts a *de novo* review of "a district court's dismissal of a complaint for failure to state a claim upon which relief could be granted, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998).

The Court reviews an order striking pleadings for abuse of discretion. *Dzwonkowski v. Dzwonkowski*, 298 F. App'x 885, 886 (11th Cir. 2008).

The Court "review[s] the district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable factual inferences in favor of the nonmoving party." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

16

## SUMMARY OF THE ARGUMENT

The district court improperly granted summary judgment in this case in large part due to two incorrect predicate rulings.

First, the district court committed error by dismissing four counts of Appellants' Amended Complaint alleging violations of the Arkansas Trust Code. The court's ruling was legal error resulting from a misinterpretation of the Trust Code and well-established principles of trust law.

Despite allowing Appellants to amend their complaint in accordance with the ruling on the motion to dismiss, the district court compounded the error inherent in its ruling on the motion to dismiss by subsequently striking *sua sponte* Appellants' Second Amended Complaint. The district court did not specify under what Rule of Civil Procedure or other authority it was striking the Second Amended Complaint, nor did it give Appellants advance notice of its intention to strike the complaint or an opportunity to be heard regarding the same. This constituted an abuse of discretion.

The wrongful dismissal of the Trust Code claims in the Amended Complaint and the striking of the Second Amended Complaint both infected the district court's Order granting Appellee's motion for summary judgment on Appellants' fiduciary duty and declaratory judgment claims. Critically, the district court refused to consider certain evidence pertinent to the breach of fiduciary duty simply because

17

those facts had been used in the Second Amended Complaint to allege claims that the Court struck in its Order. The district courts' refusal to consider this evidence was clear legal error.

For each of these reasons, this Court should reverse each of the district court's Orders and remand this case for further proceedings.

## ARGUMENT

## I.    The District Court Erred in Dismissing Counts 2, 3, 4 and 5 of Appellants' Amended Complaint.

### A.    Error in Dismissing Counts 2, 3 and 4.

#### 1.  The district court misinterpreted Ark. Code Ann. § 28-73-802.

Counts 2–4 of the Amended Complaint allege that Fairshare violated Ark. Code Ann. § 28-73-802(a) and 802(c)(4). Doc. 45 at ¶¶ 46-48, 58-59, 68-69. In dismissing Counts 2–4, the district court held § 802(b) applied to Appellants' claims under § 802(c). *Compare* Doc. 67 at 4-8 with Doc. 45 at ¶¶ 46-48, 58-59, 68-69. This was error.

Section 802(b) provides:

> (b) . . . [A] sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless:

18

(1) the transaction was authorized by the terms of the trust;

(2) the transaction was approved by a court;

(3) the beneficiary did not commence a judicial proceeding within the time allowed by § 28-73-1005;

(4) the beneficiary consented to the trustee's conduct, ratified the transaction, or released the trustee in compliance with § 28-73-1009; or

(5) the transaction involves a contract entered into or claim acquired by the trustee before the person became or contemplated becoming a trustee.

By its terms, § 802(b) plainly relates to transactions "entered into by the trustee for the trustee's own personal account . . . ." Ark. Code Ann. § 28-73-802(b). Subsection 802(b) further provides that such a transaction "is voidable" unless one of the exceptions listed in § 802(b)(1)-(5) applies. *Id.* Thus, self-dealing transactions for the trustee's own benefit are "irrebuttably presumed to be affected by a conflict" and "voidable without further proof." Ark. Code Ann. § 28-73-802(b) cmt. However, in Counts 2–4, Appellants did not allege that Fairshare entered into a conflicted transaction for its own "personal account" or "personal interests."

Instead, Appellants alleged that Fairshare, as trustee, entered into conflicted transactions with affiliated entities, WVR and Wyndham Consumer Finance (WCF). Doc. 45 at ¶¶ 48-49, 60-61, 70-71. Section 802(c) provides:

19

(c) A sale, encumbrance, or other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee with:

>    (1)    the trustee's spouse;
>
>    (2)    the trustee's descendants, siblings, parents, or their spouses;
>
>    (3)    an agent or attorney of the trustee; or
>
>    (4)    a corporation or other person or enterprise in which the trustee, or a person who owns a significant interest in the trustee, has an interest that might affect the trustee's best judgment.

Unlike § 802(b), claims alleged under § 802(c) are "presumptively voidable, not void." Ark. Code Ann. § 28-73-802(c) cmt.

Contrary to the district court's conclusion, the remedy of voiding a conflicted transaction exists under both §§ 802(b) and 802(c). Without citing to any case law or to the comments to § 28-73-802, the district court insisted that § 802(b) "provides the remedy available to beneficiaries affected by such conflict of interests—namely that it is voidable. In turn, § 802(c) defines the exclusive list of ways in which a conflict of interest is presumed." Doc. 67 at 5. The district court explained:

> It is true that subsection 802(c) allows a presumption of a conflict, but only *after* the requirements and conditions of subsection (b) are met. Plaintiff's proposed reading of Section 802 effectively avoids the requirements of Subsection 802(b). This cannot be the case. Subsection 802(b) provides the *remedy* while Subsection 802(c)

20

merely provides the *definition* of when there is a presumption of a conflict. Because Subsection 802(c) does not provide a remedy itself, Plaintiff cannot avoid the mandates of Subsection 802(b) and the Court declines to adopt Plaintiff's misstatement of Section 802.

Therefore, in order to state a cause of action under Arkansas Trust Code § 28-73-802, Plaintiff must allege the elements, which include the conditions set forth in Subsection 802(b).

*Id.* at 6-7.

The conclusion that § 802(b) provides the remedy and that no remedy exists under § 802(c) is simply incorrect. Voiding the conflicted transaction is an available remedy under both subsections—but the presumption afforded to the beneficiary is different. Under § 802(b), a conflicted transaction entered into by a trustee for its own benefit is "voidable without further proof," Ark. Code Ann. § 28-73-802(b) cmt., while § 802(c) provides that a conflicted transaction entered into with a third-party is "presumptively voidable." Ark. Code Ann. § 28-73-802(c) cmt. Indeed, the trustee carries the burden to rebut the § 802(c) presumption. *Id.*

The district court's sole rationale for dismissing Counts 2–4 was "[b]ecause Subsection 802(c) does not provide a remedy itself, [therefore] Plaintiff cannot avoid the mandates of Subsection 802(b). . . [and] in order to state a cause of action under Arkansas Trust Code § 28-73-802, Plaintiff must allege the elements, which include

21

the conditions set forth in Subsection 802(b)." Doc. 67 at 6-7.[25] Because § 802(c)

clearly provides a remedy to void a transaction entered into by a trustee with a third

party, the district court erred in requiring Appellants to allege a violation of § 802(b)

as well.  For these reasons, its decision should be reversed.

### a. The district court's interpretation of § 802(b) ignores other provisions of the Trust Code.

The district court decision requiring pleading the elements of § 802(b),

ignores other provisions of the Arkansas Trust Code undermining its conclusion. For

example, a strict reading of § 802(b)(1) would allow a trustee to violate the duty of

loyalty as long as the "transaction was authorized by the terms of the trust."

However, this is expressly contradicted by other provisions of the Trust Code. For

example, § 105(b) provides:

> (b) The terms of a trust prevail over any provision of this chapter *except*:
>
> (2) *the duty of a trustee to act in good faith* and in accordance with the purposes of the trust;
>
> (3) *the requirement that a trust and its terms be for the benefit of its beneficiaries*, and that the trust have a purpose that is lawful, not contrary to public policy, and possible to achieve;

Ark. Code Ann. § 28-73-105(b)(2) & (b)(3) (emphasis added).

---

[25] Appellants also demonstrated they did not consent to or ratify the trustee's conduct. *See* Doc. 49 at 11-14.

Similarly, § 814(a) states:

> Notwithstanding the breadth of discretion granted to a
> trustee in the terms of the trust, including the use of such
> terms as "absolute", "sole", or "uncontrolled," *the trustee
> shall exercise a discretionary power in good faith and in
> accordance with the terms and purposes of the trust and
> the interests of the beneficiaries.*

Ark. Code Ann. § 28-73-814(a) (emphasis added).  Subsections 105(b)(2), 105(b)(3)

and 814 thus require an examination of the fairness and good faith of any transaction

entered into by a trustee even when § 802(b) might suggest that an exception applies.

Requiring Appellants to plead the elements of § 802(b) renders these contrary

provisions of the Trust Code meaningless.

### b. The district court's interpretation of § 802(b) is contrary to established law.

The district court's conclusion  also plainly ignored the common law of trusts.

"In 2005, Arkansas adopted a version of the Uniform Trust Code (UTC), retitled as

the Arkansas Trust Code." *Matter of GNB III Trust*, 574 S.W.3d 159, 163 (Ark. Ct.

App. 2019). In fact, Ark. Code Ann. § 28-73-802 is nearly identical to § 802 of the

Uniform Trust Code. The Uniform Trust Code "was drafted in close coordination

with the writing of the Restatement Third [of Trusts]." *See* Uniform Trust Code,

23

Prefatory Note (2003).[26] "The Uniform Trust Code codifies those portions of the law of express trusts that are most amenable to codification. The Code is supplemented by the common law of trusts, including principles of equity, particularly as articulated in the Restatement of Trusts, Restatement (Third) of Property: Wills and Other Donative Transfers, and the Restatement of Restitution." *See* Uniform Trust Code § 106 cmt (2003). The Arkansas Trust Code also acknowledges the importance of the common law of trusts. *See* Ark. Code Ann. § 28-73-106 ("The common law of trusts and principles of equity supplement this chapter, except to the extent modified by this chapter or another statute of this state.").

If the district court's reasoning was correct then no trustee duty of loyalty violation could ever stand if the alleged conflicted transaction was "authorized by the terms of the trust" or consented to, ratified, or released by a beneficiary. Ark. Code Ann. § 28-73-802(b)(1) & (b)(4). That result ignores the established common law.

The Restatement (Third) of Trusts § 78 (2007) examines a trustee's duty of loyalty. Because Ark. Code Ann. § 28-73-802 and the Uniform Trust Code § 802 (2003) govern the duty of loyalty, it is appropriate to consult the corresponding

---

[26] Importantly, the "statutory text of the Uniform Trust Code is also supplemented by [its] Comments, which, like the Comments to any Uniform Act, may be relied on as a guide for interpretation." Uniform Trust Code § 106 cmt (2003).

Restatement duty of loyalty section. *See* Restatement (Third) of Trusts § 78. Comment c(2) to § 78 examines the duty of loyalty when, as recognized by Ark. Code Ann. § 28-73-802(b)(1), a trustee is authorized by the terms of the trust to engage in a conflicted transaction. Comment c(2) provides:

> Even an express authorization of this type, however, would not completely dispense with the trustee's underlying fiduciary obligations to act in the interest of the beneficiaries and to exercise prudence in administering the trust. Accordingly, no matter how broad the provisions of a trust may be in conferring power to engage in self-dealing or other transactions involving a conflict of fiduciary and personal interests, a trustee violates the duty of loyalty to the beneficiaries by acting in bad faith or unfairly.

Restatement (Third) of Trusts § 78 cmt. c(2), (2007).

Restatement Comment c(2) is consistent with case law applying similar provisions adopted from the Uniform Trust Code. In *Roenne v. Miller*, 475 P.3d 708 (Kan. Ct. App. 2020), the Kansas Court of Appeals examined a lawsuit brought by the beneficiaries of a trust who sued the trustee for converting income from the trust for his own use, among other things. The trial court ruled for the trustee because the trust vested the trustee with unlimited authority. *Id.* at 711. In reversing the trial court's decision, the Kansas Court of Appeals stated:

> By law, a trustee owes the beneficiaries of a trust three duties: loyalty, impartiality, and prudence. The trustee here, Brad Miller, violated all three of these fiduciary duties when he took all of the trust assets for himself and

his wife. The district court erred when it ruled that because the testamentary trust instrument gave Miller discretion to act, he could ignore the interests of the other beneficiaries and clean out the trust for his own use.

*Id.*

The Kansas Court acknowledged that the trustee "had great freedom to act in his capacity as trustee," however, the court also recognized that "[a] court may [] interfere in cases of an abuse of discretion by a trustee, where the trustee acted in bad faith or the trustee's 'conduct is so arbitrary and unreasonable as to amount to practically the same thing.'" *Id.* (internal citation omitted).

The Kansas Court further held that "[a] trustee's statutory duties can be modified by a trust instrument. But there are limits. Despite any language in the trust granting the trustee 'uncontrolled' discretion, the terms of a trust cannot legally supersede the duties of a trustee to act in good faith and administer the trust for the benefit of the beneficiaries." *Id.* at 716 (citing § 105 and § 814 of the Kansas Uniform Trust Act). Finally, the Kansas Court noted:

> The various cases that have dealt with these laws have all recognized that while the intent of the grantor is paramount, the law limits a trustee. Even where the grantor intended the trustee to have as much power as possible over the trust, the law restricts that power. The trustee must act in good faith and in the interests of the beneficiaries. While a trust can eliminate strict prohibitions, such as that against self-dealing, it cannot eliminate the duty of loyalty. That limit preserves the

26

> fundamental fiduciary character of trust relationships recognized by law.

*Id.* at 716 (citations omitted).

Prior to the adoption of the Uniform Trust Act, other courts also recognized the principle that trustees must act fairly and in good faith even if an exculpatory clause exists in the trust agreement. *See Heyman v. Heyman*, 33 N.Y.S.2d 235, 242 (N.Y. Sup. Ct. 1942) (holding that a trustee's power must be exercised "in the best of faith and to evince the highest degree of disinterestedness, loyalty and honor" even if a provision in the trust relaxes the prohibition on self-dealing); *Renz v. Beeman*, 589 F.2d 735, 744 (2d Cir. 1978) (recognizing that an exculpatory clause reduces a trustee's duty from utmost loyalty to one of good faith). Because the established law on trusts refutes any assertion that Ark. Code Ann. § 28-73-802(b) forecloses review of a trustee's breach of the duty of loyalty or examination of the fairness of any conflicted transaction entered into by a trustee, Appellants should not have been required to plead the elements of § 802(b) in order to state a claim under § 802(c).

## B. The District Court Disregarded the Allegations in Count 5

The district court disregarded Plaintiffs' allegations in Count 5 of the Amended Complaint and decided a factual issue without accepting those allegations as true or construing them in the light most favorable to Appellants. Count 5 alleges

that Fairshare violated Ark. Code Ann. § 1003. Section 1003(a) provides "[a] trustee is accountable to an affected beneficiary for any profit made by the trustee arising from the administration of the trust, even absent a breach of trust."

In the Amended Complaint, Appellants alleged that Fairshare profited from the administration of the trust. Specifically:

> 79.    The Trustee has violated Ark. Code Ann. § 28-73-1003 by accumulating a positive trust fund balance through excess fees and revenue collected from Plaintiffs and the class. The Program Fee paid by Plaintiffs and the class constitutes some or all of the Trust's fund balance. This surplus trust fund balance is currently held by Defendant exclusively for its own use.
>
> 80.    Despite accumulating substantial profits from the Trust and holding those funds for its own use, Defendant continues to increase the amount of fees and revenues it collects from Plaintiffs and the class. None of the surplus trust fund balance held by the Trustee has been shared with or credited to Plaintiffs or the class; even though, all of the surplus trust fund balance was generated from revenue received from the Trust's Beneficiaries.

Doc. 45 at ¶¶ 79-80.

As demonstrated below in section III.A.2, *infra*, Appellants proved at summary judgment that Fairshare retained ███ of dollars in surplus trust fund balances, and that this constitutes "profit" under any reasonable interpretation of that word. For example, in Fairshare's most recent Audited Financial Statement, the "Excess of Revenues Over Expenses" for 2020 was ███ which ballooned

the surplus Trust Fund balance to ███████. *See* Doc. 105 at ¶ 9. Black's Law Dictionary (11th ed. 2019) defines "profit" as "[t]he excess of revenues over expenditures in a business transaction."

Appellants alleged that Fairshare accumulated a surplus trust fund balance through excessive fees and revenue collected from them. Doc. 45 at ¶ 79. Fairshare's own audited financial statement reveals that it collected an "Excess of Revenues Over Expenses"—the legal definition of profit. Appellants further alleged that Fairshare held these funds for its own use and failed to share them with, or credit them to, Appellants. *Id.* at ¶ 80. These allegations are sufficient to withstand a motion to dismiss and the district court erred in failing to accept them as true and construe them in the light most favorable to Appellants.

## II. The District Court Erred in *Sua Sponte* Striking the Second Amended Complaint.

The district court violated the Federal Rules of Civil Procedure and longstanding precedent of this Court by *sua sponte* striking the Second Amended Complaint ("SAC"). As an initial matter the district court failed to identify under what Federal Rule of Civil Procedure or other authority it was operating. This alone was error. As demonstrated below, whether under Rule 12(f) or Rule 41, the district court erred.

## A. Neither the Cited Cases nor Rule 12(f) Supports the Striking Order.

The only legal authority cited in the Striking Order were two cases: *The Cincinnati Ins. Co. v. Cochran*, 05-16867, 2006 WL 4495335 (11th Cir. Dec. 27, 2006), and *Kuenzig v. Kraft Global Foods, Inc.,* 2012 WL 366927 (M.D. Fla. 2012). *See* Doc. 76 at 6.

The *Kuenzig* Court's decision to strike *portions* of the complaint at issue before it—and, notably, not the entirety of the amended pleading, as here—was entered in response to the defendant's Motion to Dismiss or Strike, and thus conceivably proceeded under Rule 12(f). *See Kuenzig*, 2012 WL 366927, at *1 (stating that "[t]his cause comes before the Court on Defendant Hormel Foods Corporation's Motion to Dismiss or Strike"). Moreover, as that striking was pursuant to a motion—and not *sua sponte* as here—the plaintiff had the opportunity to be heard.

As to *Cincinnati Ins.*, the opinion is not clear as to whether the striking of a certain counterclaim (again, not the entire pleading) was upon a motion or *sua sponte. Cincinnati Ins. Co.*, 2006 WL 4495335, at *3. A review of the appellant's brief seems to indicate the ruling was issued in response to a successive motion to amend and that the party whose claim was struck had an opportunity to be heard. *See* Appellant's Brief, 2006 WL 4392130 (noting that in the order striking a

30

counterclaim, that the defendant had "allege[d] that it is too late for the Court to do anything about it," implying an opportunity to be heard).

Accordingly, neither case provides support for the Striking Order: in neither case did the court act *sua sponte* and in neither case was a pleading struck in total.

Moreover, the inapplicability of those cases follows from the text of Rule 12(f), which permits "[t]he court [to] strike ***from a pleading*** an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). The rule, by its terms, does not envision the striking of pleadings in total but rather the striking of material "from" a pleading. "In other words, whereas an entire claim or count may be *dismissed*, portions of a claim or count may be *stricken*." *Hutchings v. Fed. Ins. Co.*, No. 6:08-CV-305-ORL-19KR, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008) (comparing Fed. R. Civ. P. 12(b)(6) *with* Fed. R. Civ. P. 12(f)); *see also, e.g.*, *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1293–94 (M.D. Fla. 2021) (noting that a motion to strike "is not intended to procure the dismissal of all or part of a complaint"); *Williams v. Delray Auto Mall, Inc*., 289 F.R.D. 697, 699–700 (S.D. Fla. 2013) ("[M]otions to strike are not an appropriate form of dismissal of a complaint.").

In any event, assuming the district court was attempting to use Rule 12(f) and could properly do so to strike the entire pleading—which it cannot—the standard for striking material under Rule 12(f) is incredibly high and the district court failed to

articulate how it was met here. Specifically, precedent from the Former Fifth recognized that:

> "[I]t is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice. The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy."
>
>  . . . .[W]hen there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike. Under such circumstances, the court may properly, and we think should, defer action on the motion and leave the sufficiency of the allegations for determination on the merits.

*Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla*., 306 F.2d 862, 868 (5th Cir. 1962) (cleaned up) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).

Spring boarding from *Augustus*, multiple district courts in the circuit, including the district court judge here, have recognized that striking is "a drastic remedy" that "courts generally disfavor." *Gary S Logsdon v. Kenneth H Davis & Sherry R Mansfield*, No. 5:20-CV-335-OC-40PRL, 2020 WL 13358527, at *1 (M.D. Fla. Oct. 16, 2020) (Byron, J.). It should only be employed "for material that 'ha[s] no possible relation to the controversy and may cause prejudice to one of the parties.'" *Dang v. Honda Motor Co., Ltd,* No. 6:14-CV-2071-ORL-40DAB, 2015

WL 12830489, at *3 (M.D. Fla. Mar. 25, 2015) (Byron, J.) (quoting *Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07–22046–CIV, 2008 WL 4648999, at *14 (S.D. Fla. Oct. 20, 2008). And, critically, "prejudice to the moving party is the cornerstone of Rule 12(f)." *Id.*

Despite having previously recognized this standard, the district court failed to meet it. Fairshare had not sought to strike the SAC, had claimed no prejudice, and had *agreed to* a new schedule, precluding any possible finding of prejudice. Still the district court employed this "drastic" remedy without so much as affording Appellants the opportunity to be heard. This was error. And, as described below in section III.A., the new factual material was not "immaterial" to the previously permitted claims, but rather, wholly relevant thereto.

## B. Alternatively, Dismissal Under Rule 41 Would Be Improper.

On the other hand, to the extent the district court was attempting to involuntarily dismiss the claims in the SAC under Rule 41, that tact too was infirm. This Court has recognized that *sua sponte* dismissal with prejudice is a severe sanction that can only be exercised by a district court in rare circumstances:

> The Federal Rules of Civil Procedure do not provide for *sua sponte* dismissal by the court of a case on the merits. Rule 41 provides that the court may grant an involuntary dismissal upon a motion by the defendant, either because the plaintiff has failed to prosecute or comply with the rules, or if the plaintiff has failed to show a right to relief after having presented his case in a trial without a jury…. [T]he Fifth Circuit has also upheld *sua sponte* dismissals when there has been a failure to

prosecute or a failure to comply with court orders. When dismissing a case for those reasons, courts have warned that the severe sanction of dismissal should be imposed only in the face of a clear record of delay or contumacious conduct by the plaintiff.

*Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.,* 695 F.2d 524, 526

(11th Cir. 1983) (cleaned up). *Jefferson* recognizes the proper procedural steps

needed before dismissing, including providing an adequate opportunity to respond:

> The Ninth Circuit reversed a *sua sponte* dismissal where the proper procedural steps were not taken, holding: "[t]he trial judge should have given notice of his intention to dismiss, an opportunity to submit a written memorandum in opposition to such motion, a hearing, and an opportunity to amend the complaint to overcome the deficiencies raised by the court...." *California Diversified Promotions, Inc. v. Musick,* 505 F.2d 278, 281 (9th Cir.1974).

*Id.*

This Court has been steadfast in these procedural requirements: "the Federal Rules of Civil Procedure do not provide for *sua sponte* dismissal on the merits. As a result, we have cautioned that a district court must afford a plaintiff due process before dismissing a complaint *sua sponte.* In other words, there must be adequate notice and an opportunity to be heard." *Lindley v. City of Birmingham, Ala.,* 452 F. App'x. 878, 880–881 (11th Cir. 2011).

Even in the rare circumstances where a district court may dismiss an action for failure to comply with an order or with the local rules, such dismissals must be supported by a strong record and a finding that a lesser sanction would not suffice:

34

> However, because the penalty is so drastic, a district court may dismiss a case with prejudice only where there is a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice. Mere delay will not suffice; a finding of such extreme circumstances necessary to support the sanction of dismissal must, at a minimum, be based on evidence of willful delay; simple negligence does not warrant dismissal.

*Kilgo v. Ricks*, 983 F.2d 189, 192–193 (11th Cir. 1993) (cleaned up).

In *Cohen v. Carnival Cruise Lines, Inc.*, 782 F.2d 923, 925 (11th Cir. 1986) the Court further explained this obligation:

> The trial court's dismissal of this case is improper not only in the absence of clear delay or willful contempt, but also in view of the court's failure to consider less drastic sanctions for non-compliance. Dismissal with prejudice is proper only where a lesser sanction would not serve the interest of justice. The district court did not indicate in its order of dismissal that it had even considered lesser sanctions, much less found that justice dictated dismissal.

The Striking Order is contrary to this Court's precedent in many regards. First, the district court failed to provide Appellants notice and an opportunity to be heard. At no time prior to the April 8th hearing did the district court provide notice of its concern that the SAC exceeded the permission to amend in the Motion to Dismiss Order. The *only issue* before the district court at that hearing was the parties' agreed request for a Rule 16 Status Conference and proposed schedule. Fairshare had not moved to strike the SAC. The district court raised its concerns at the Rule 16 Status Conference and immediately struck the SAC the next day. In addition, the Striking Order is completely devoid of any consideration of a lesser sanction than dismissal.

Indeed, the district court did not consider any other option. The record here lacks any evidence or showing that Appellants willfully violated the district court's Order. In fact, the parties' joint submission of the Proposed Amended Case Management and Scheduling Order wherein agreement was reached on all deadlines except one, strongly indicates the SAC did not prejudice Fairshare at all.  The district court's *sua sponte* decision to strike the entirety of the SAC should be reversed.

### C. Count 5 of the SAC Did Not Violate the District Court's Order and Counts 1 and 9 Should Not Have Been Stricken in Total.

While the striking of the SAC in total was improper as generally, it also was incorrect based on the district court's own order that permitted the amendment in the first place.

Specifically, Count 2 of the Amended Complaint alleged Fairshare violated § 802(c) of the Arkansas Trust Code by entering into a management agreement with WVR that resulted in Appellants paying excessive fees to an affiliated entity of Fairshare. Doc. 45 at 10-12. As described above, in the Motion to Dismiss Order, the Court found this claim lacking because Appellants did not allege facts meeting the conditions in § 802(b). The district court permitted Appellants to amend their complaint to address this concern. Doc. 45 at 7. Therefore, Appellants could satisfy the district court's concern by filing an amended pleading alleging, *inter alia*, that Fairshare's conduct was not authorized by the terms of the Trust.

36

Count 5 of the SAC directly addressed that criticism. Count 5 sets forth facts establishing that Fairshare violated § 802(b) by paying expenses not authorized by the terms of the Trust Agreement. Doc. 69 ¶¶ 22–24, 83–89. These allegations were in direct response to the district court's directive to address the conditions in § 802(b).

The district court struck Count 5 of the SAC by concluding that it contained new legal theories and facts not contained in the Amended Complaint. This was incorrect. Count 2 of the Amended Complaint and Count 5 of the SAC were both based on the same legal theory, namely that Fairshare violated § 802(c) by entering into a management agreement with an affiliated entity. Both Counts allege Fairshare's conduct resulted in Appellants being charged excessive fees. The only additional allegations contained in Count 5 of the SAC were factual allegations explaining how Fairshare's payment of certain marketing expenses was not authorized by the terms of the Trust. But those factual allegations were in direct response to the district court's criticism that, "Plaintiffs must allege the elements which include the conditions set forth in Subsection 802(b)." Doc. 67 at 7.

A comparison of Count 2 of the Amended Complaint and Count 5 of the SAC quickly reveals the only additional allegations in Count 5 were in response to the district court's directive to address § 802(b). Six of the ten substantive paragraphs contained in SAC Count 5 are also in Count 2 of the Amended Complaint. SAC

37

Count 5 contains only four new paragraphs, each of which address the conditions of § 802(b). Accordingly, the district court's conclusion that Count 5 of the SAC exceeded its permission to amend is not supported, was an abuse of discretion, and should be reversed.

Similarly, even assuming the district court was correct in striking claims in the SAC brought under provisions of the Arkansas Trust Code not previously alleged, Counts 1 and 9 of the SAC reassert claims the district court had just upheld—declaratory relief and breach of fiduciary duty. To whatever extent those claims incorporated factual allegations the district court believed beyond the scope of its permission to amend, that material alone should have been ignored with the remaining aspects of the claims persisting.

## III.  The District Court Erred in Granting Summary Judgment.

The district court's summary judgment order is inextricably infected with the errors of the Motion to Dismiss Order and the Striking Order. Fundamentally, because it had stricken the SAC which included allegations regarding Fairshare's lack of due diligence concerning the amounts WVR charged it and Fairshare's failure to hold a vote concerning the surplus Fund Balance, the district court ignored all such evidence for purposes of summary judgment, even where the evidence unequivocally applied to pending claims. This was error.

As this Court is well-aware, the "District Court *[must] consider all evidence in the record* when reviewing a motion for summary judgment . . . ." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (alteration in original) (emphasis added) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)).[27] Thus, in *Gibson v. JetBlue Airways Corp.*, 20-10943, 2021 WL 5368056 (11th Cir. Nov. 18, 2021), because "it appear[ed] the district court disregarded Gibson's skills-and-background evidence and considered only JetBlue's job-performance-evaluations evidence, we conclude that it was error." *Id*. at *6. The same is undisputedly true here and the same outcome should be reached.

### A. The District Court Expressly Refused to Consider Evidence.

The district court's error in the summary judgment order is plain. Fairshare moved for summary judgment on Appellants' breach of fiduciary duty claim, the eight illustrative subparts of which are found at ¶ 85 of the Amended Complaint, that Fairshare violated its fiduciary duty by:

> (b) allowing an affiliated entity, WVR, to serve as the Plan Manager for the Trust;

> (d) entering into a management agreement with an affiliated entity, WVR;

---

[27] *See also, e.g.*, *Watkins v. Capital City Bank*, 711 F. App'x. 591, 592 (11th Cir. 2018) ("The district court must consider all evidence in the record when reviewing a motion for summary judgment . . . .") (citing *Strickland*, 692 F.3d at 1154); *Buckman v. Morris*, 736 F. App'x. 852, 853 (11th Cir. 2018) (same); *Ivory v. Warden, Governor of Alabama*, 600 F. App'x. 670, 677 (11th Cir. 2015) (same).

(e) exempting an affiliated entity, WVR, from paying certain fees including the Fairshare Plus Assessment;

(f) collecting excessive fees, including the Program Fee, and failing to return any surplus Trust Fund Balance to the Beneficiaries of the Trust;

(g) by failing to share profits from the Trust with the Beneficiaries of the Trust.

Doc. 45 at ¶ 85.[28] The district court refused to consider evidence that supported these claims.

### 1. Evidence regarding due diligence

As to the allegations concerning WVR serving as the Plan Manager and entering into the Management Agreement therewith (¶ 85(b) & (d)), the district court explained that, pursuant to Arkansas trust law, the "paramount principle in the interpretation of trusts is that the intention of the trust settlor governs, and this intention 'is to be determined from viewing the four corners of the instrument considering the language used and giving meaning to all its provisions whenever possible.'" Doc. 143 at 15 (quoting *Fisher v. Boling*, 575 S.W.3d 592, 594 (Ark. Ct. App. 2019)). Accordingly, the district court stated that it would "not ignore the clear and unequivocal intent of the settlor embodied in the terms set forth within the four corners of the Trust Agreement and the incorporated Management Plan, including

---

[28] Plaintiffs conceded their claims concerning securitizing and financing related theories, subparts 85(a), (c), and (e)[1]. *See* Doc. 105 at 24–25.

40

the designation of WVR as Plan Manager and all the related rights and responsibilities that were described therein." *Id.*

However, the district court reached this conclusion by expressly "***refus[ing] to entertain evidence*** related to due diligence by Defendant-Trustee Fairshare." *Id.* at 14 n.8 (emphasis added). That evidence was set out in paragraphs 7 and 8 of Appellants' statement of facts:

> 7. Fairshare performed no initial or ongoing analysis or due diligence regarding the selection of WVR as the Plan Manager, the amount of the Management Fee paid to WVR, WVR's continuing services and rates, the amounts being charged by WVR for expenses, nor whether other independent third-parties could provide similar services for less cost.
>
> 8. Fairshare did not solicit bids or perform other comparative analysis of proposed budgets submitted to it when determining the annual Program Fee amount—a Program Fee amount that has never gone down during approximately the last decade.

Doc. 105 at 9 (footnotes omitted).[29]

Despite this, the district court recognized that:

> [I]f Plaintiffs could demonstrate that . . . Defendant-Trustee Fairshare's supervisory role as trustee was abdicated due to its interactions with WVR, the provision for WVR's role as Plan Manager in the terms of the Trust could not save Defendant-Trustee Fairshare.

Doc. 143 at 17.

---

[29] Importantly, this information came directly from Fairshare's corporate representative, Jodi Rogers, and thus cannot be reasonably contested.

But that is precisely what Appellants' evidence showed: that Fairshare had utterly abdicated its role as Trustee. Fairshare functioned—self-admittedly—as no more than a rubber stamp to the amounts WVR proposed, charged, and passed along to Class Members to pay. Yet, the district expressly ignored that evidence.[30]

Similarly, the district court ignored this same evidence as it related to Appellants' allegations concerning the collection of excessive fees. *See* Doc. 45 ¶ 85(f). The collection of excessive fees has been a central tenet of this case throughout its history and was the chief complaint of Appellants. *See* Doc. 45 at ¶¶ 19–21; Doc. 105 at ¶¶ 10–12. The evidence was, again, uncontested that the amount of fees collected yearly had only ever risen (despite a yearly-ballooning Fund Balance) and this is not surprising given Fairshare preformed precisely zero analysis or due diligence concerning the amounts WVR and other Wyndham entities were charging.

---

[30] Moreover, the district court's conclusion appears to have been based solely on the fact of disclosure of the arrangement with WVR within the Trust Agreement and related documentation, and the court's derivation therefrom of the "intent" of the settlor. Doc. 143 at 14–15. However, as explained above in section I.A.1.b., such disclosure within the trust instrument is not, standing alone, sufficient to preclude a breach of fiduciary duty, but rather a finding of fairness must still be made. *See, e.g.*, Restatement (Third) of Trusts § 78 cmt. c(2), (2007); *Roenne v. Miller*, 475 P.3d 708 (Kan. Ct. App. 2020). On this basis too then the district court erred.

Yet, the district court expressly ignored the lack of analysis or due diligence evidence here too. *See* Doc. 143 at 20 n.12. Disregarding it, the district court concluded, "the raw numbers tell the Court nothing about when the Program Fees or payments to related entities become excessive, and Plaintiffs provide the Court no evidence—no industry standards, no accounting analyses, no financial calculations—to fill in this gap with regards to any of the supposedly suspect payments." *Id.* at 20.

However, drawing all inferences in Appellants' favor as the district court was mandated to do (but undoubtedly did not), certainly an-ever expanding surplus Fund Balance combined with an admitted utter abdication of any oversight concerning the amounts WVR was charging would have shown that a material dispute of fact existed.[31]

### 2. Evidence regarding surplus Trust Fund balance

Appellants alleged in ¶¶ 85(f) & (g) that Fairshare had failed to return any surplus Trust Fund Balance to the Beneficiaries and failed to share profits from the Trust with the Beneficiaries. The district court also discounted evidence as to the surplus Trust Fund Balance and entered summary judgment thereupon. *See* Doc. 143

---

[31] Plaintiffs also would have shown at trial, through the use of publicly available SEC filings, that Wyndham profited far more in fees from Class Members than its competitor timeshare companies. *See* Plaintiffs' First Supplement to Rule 26 Disclosures, Doc. 127-2.

43

at 18–20. In this context, directly contrary to its above-described exacting analysis of the Trust Agreement and related documents in order to ascertain intent, as regarded the other claims, (*id.* at 15–18), here the district court expressly ignored the terms of the pertinent documentation.

Specifically, it is undisputed that Fairshare ran yearly, ███████████ Fund Balance surpluses. However, the district found, without support, that "a positive fund balance' by itself does not amount to profit to Defendant[-Trustee Fairshare]." *Id.* at 19. As noted above, this is simply not true, as any reasonable definition of "profit" is revenue in excess of expenses.[32] That is precisely what the surplus Fund Balance admittedly was—Program Fees collected in excess of what was needed for the operations in the corresponding year. *See* Doc. 103 at ¶ 11 ("The Program Fee is the fee 'payable to the Trustee . . . by [Club] Members for the expenses incurred in connection with the operation and administration of the Plan,' the amount of which 'is determined by the Trustee. . .'"); Doc. 103 at ¶ 54 ("The amount of the Program Fee is determined by the Trustee as needed to cover the cost

---

[32] *See, e.g.*, Black's Law Dictionary (11th ed. 2019) (defining "profit" as "[t]he excess of revenues over expenditures in a business transaction."); Merriam Webster, https://www.merriam-webster.com/dictionary/profit ("the excess of returns over expenditure in a transaction or series of transactions especially **:** the excess of the selling price of goods over their cost."); Dictionary.com, https://www.dictionary.com/browse/profit ("the monetary surplus left to a producer or employer after deducting wages, rent, cost of raw materials").

of the operation and administration of the Plan."); Doc. 103 ¶ 59 ("The audited financial statements also establish that Fairshare has accumulated a yearly Fund Balance and cash surplus.").

Moreover, whether "profit" or not, ¶ 85(f) faults Fairshare for not returning the excess regardless of how described. The district court wholly ignored that allegation and corresponding proof, finding that:

> [C]iting to the raw Trust balance itself tells the Court nothing about *whether Defendant-Trustee Fairshare has gone too far.* . . . Without analysis showing when the retention of the Trust's surplus would become excessive or allegations supported by specific facts tending to show that Defendant-Trustee Fairshare used the Trust balance for its own or its related entities' benefit, the Court finds Plaintiffs have still failed to produce sufficient record evidence that would create a genuine issue of fact.

Doc. 143 at 19–20 (emphasis added).

To the contrary, Appellants provided just such evidence of "going too far" and when retention became "excessive," but the district court expressly chose "not to consider it." Doc. 143 at 19 n.11.

Specifically, the Second Amended and Restated Bylaws of Fairshare Vacation Owners Association (the "Bylaws")—which are incorporated by reference into the Trust Agreement[33]—provide direct guidance to Fairshare on how it should

---

[33] Trust Agreement (Doc. 82-1 at 227), definition of "Member", §§ 4.03, 6.03, 7.04(a), 13.01, 14.04, 14.09 (referencing, and thus incorporating by reference, the "By-Laws of the Association," including explaining, at § 13.01, that "all Members

administer the Trust when a surplus Trust Fund balance exists. Section 2.2 provides that where the Board determines "for any year that the total amount of Program Fees for that year will exceed the total amount of the costs (the 'Plan Costs') to operate and administer the Plan," that "the Board shall cause the Members to vote at the annual meeting occurring during that year on whether to [1] refund such excess to the Members or [2] to apply such excess to the Program Fees for the immediately succeeding year."[34] Yet, Fairshare's corporate representative admitted that no vote in accordance with Section 2.2 of the Bylaws had *ever* been held.[35]   Yet, by December 31, 2020, the surplus Trust Fund balance had ballooned to ▮▮▮▮▮▮▮▮▮ [36]

This is exactly the type of "going too far" evidence relevant to the claim. Moreover, it was utterly incongruous for the district court to parse every clause of every related document as to the fee related claims and yet to ignore the Bylaws in the Fund Balance context.  In any event, it was required to consider that *uncontested* evidence and draw all inferences from it in Appellants' favor. It did not. That was error.

_____

are also 'Members' of the Association and are entitled to one vote at all Association meetings held in accordance with the Association's By-Laws without regard to the number of Points allocated to such Member.").

[34] Doc. 82-1 at 292.

[35] Doc. 82-1 at 151:5-8, 153:20-22, 154:13-17.

[36] Doc. 105 at ¶ 9.

**B. Precedent and Policy Dictated that Appellants' Evidence Must be Considered.**

Under *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012), it is clear the district court erred in expressly ignoring important evidence proffered by Appellants in opposition to summary judgment, as explained in detail *supra* in section III.A. However, to whatever extent that decision might be upheld on the basis that Appellants were attempting to impermissibly add claims via their summary judgment response, such arguments should be rejected.

Perforce the precise mechanism anticipated by Rule 56, a plaintiff opposing summary judgment may rely on facts developed in the course of discovery to support an existing claim. *See Dantzler v. PNC Bank*, 946 F. Supp. 2d 1344, 1361 (S.D. Fla. 2013); *Johnson v. Potter*, 732 F. Supp. 2d 1264, 1275–76 (M.D. Fla. 2010); *Hodges v. Sch. Bd. Of Orange County., Fla.*, No. 6:11-cv-135, 2012 WL 5051923, at *4 (M.D. Fla. Oct. 18, 2012). That is because the newly acquired evidence falls within the scope of the existing claim, about which the defendant is on pleading notice. *Johnson*, 732 F. Supp. 2d at 1275–76. Conversely, a plaintiff may not oppose a motion for summary judgment by presenting evidence that attempts to create a new claim, about which the defendant has no or inadequate notice. *See Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) ("A plaintiff may not amend [his or her] complaint through argument in a brief opposing

47

summary judgment."); *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1297 (11th Cir. 2006) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).") (quoting *Gilmour,* 382 F.3d at 1315)). Thus, as long as the operative complaint affords the defendant fair notice of the claims at issue, a plaintiff opposing summary judgment need not have first amended the complaint *seriatim* to "recite every factual detail" gained through the normal course of discovery. *Dantzler*, 946 F. Supp. 2d at 1361. Yet, that is what the district court here appeared to believe necessary.

In *Dantzler*, for instance, the plaintiff alleged that the defendant misrepresented an essential fact regarding inventory reporting requirements. At summary judgment, the plaintiff also argued that the defendant's misrepresentation included facts concerning closing costs and a prior loan balance. The defendant argued the court could not consider those facts because the plaintiff had not specifically pled misrepresentation regarding closing costs or the prior loan balance. *Id*. at 1361. The court disagreed, holding that the plaintiff could rely on multiple misrepresentations, regardless of whether each misrepresentation was specifically detailed in the complaint. *Id.* The court recognized the fundamental distinction between asserting a new cause of action that is supported by different facts and asserting additional facts to support an existing cause of action. *Id*. at 1363. The

48

complaint alleged a list of misrepresentations that was not exhaustive, and "any other instances of misrepresentation at issue were merely the natural by-product of the discovery process." *Id*. at 1361, 1363-64. The facts at issue did "not present novel, alternative theories of liability not previously considered, nor do they serve to satisfy elements of the claim not previously addressed." *Id.* at 1363. As such, the court could consider the additional facts "without requiring an amendment to the Complaint." *Id*. at 1363-64.

Similarly, in *Hodges*, the plaintiffs pled retaliation. 2012 WL 5051923, at *4. At summary judgment, the plaintiffs supplied newly discovered facts, not recited in the operative complaint, to support their retaliation claim. *Id*. The court held that the new evidence was properly considered because the new facts related to an existing claim: the plaintiffs had submitted the evidence to "support[] an existing statutory claim," not to assert an entirely new claim not alleged. *Id*. In doing so, the court noted that the conduct alleged in the complaint comprised "examples" of retaliation that could—and did—expand as facts were gathered during the course of discovery. *Id.* So, a newly discovered retaliation incident not pled in the complaint, but which was the subject of the defendant's deposition of the plaintiff, was properly considered in support of the plaintiff's existing claim. The new evidence was familiar to the parties, was explored in discovery, and was no surprise to the defendant. Accordingly, it could be considered by the court at summary judgment.

The *Hodges* court specifically distinguished this Court's decisions in *Gilmour* and *Hurlbert*, stating:

> *Gilmour* and *Hulbert* are distinguishable from this case. In *Gilmour*, the Eleventh Circuit held that plaintiff could not raise a new contractual claim in opposition to the defendant's motion for summary judgment when her complaint set forth only tort claims and thus defendant had no notice of a contract claim. *Gilmour*, 382 F.3d at 1315. Similarly, in *Hulbert*, where plaintiff's own health condition was the sole basis for entitlement to FMLA leave pled in his complaint, the assertion of his parent's health condition in response to a motion for summary judgment constituted a new statutory basis for relief and was impermissible without an amended complaint. *Hulbert*, 439 F.3d at 1297. *Here, Plaintiffs are not attempting to assert an entirely new claim that is not contained in the operative complaint . . . . Rather, Plaintiffs are asserting additional facts to support their existing claim of retaliation.*

*Hodges*, 2012 WL 5051923 at *4 (emphasis added).

The court in *Hodges* further distinguished *Hulbert* and *Gilmour* because the arguments raised by the plaintiffs in *Hodges* had been explored by the parties and elicited in the normal course of discovery and thus could not be a surprise to the defendant:

> Further, unlike in *Gilmour* and *Hulbert* where defendants had no notice of the claim asserted in response to the motions for summary judgment, the same is not the case here. In addition to the Amended Complaint's explicit statement that the examples of retaliation were not exhaustive, [the plaintiff] Hodges testified about the 2008 piping project.

50

*Id.*; *see also Johnson v. Potter*, 732 F. Supp. 2d 1264, 1276 (M.D. Fla. 2010); *Robbins v. Oubre*, No. 5:13-CV-348 CAR, 2014 WL 4070851, at *1 (M.D. Ga. Aug. 15, 2014).

Similarly, in *Gulf Group Holdings, Inc. v. Coast Asset Mgmt. Corp.*, the plaintiff Gulf Group argued new factual evidence garnered in the course of discovery should not be considered on cross-motion for summary judgment because the new facts were not specifically recited in the defendant Coast's counterclaim. The court rejected this argument:

> The problem with Gulf Group's position is that, despite the counterclaim's narrow factual allegations, Gulf Group otherwise had ample notice of Coast's broader claim. This is not a case where an entirely new claim is being asserted at the last minute . . . .
> ***
> [A]ll parties were aware that Coast had discovered evidence that Gulf Group engaged in anti-competitive conduct at the 1998 Lee County auction. Furthermore, Coast is not asking the Court to allow it to conduct more discovery in a last-minute effort to uncover evidence of Gulf Group's wrongdoing. Coast already has that evidence.

*Gulf Group*, 516 F. Supp. 2d at 1263–65. The court held that any other instances of wrongdoing "are merely the natural by-product of the discovery process." *Id.* at 1263; *accord Dantzler*, 946 F. Supp. 2d at 1363–64 (same); *Schenone v. Zimmer Holdings, Inc.*, No. 3:12-CV-1046-J-39MCR, 2014 WL 12576790, at *8 (M.D. Fla. Aug. 8, 2014) ("[I]n light of the course of discovery and the focus of Defendants' Motion for Summary Judgment, Defendants have had ample notice of

Plaintiffs' . . . claims, and have not established that they are prejudiced by so construing the Amended Complaint.").

By way of analogy, Rule 15(b) further points toward error by the district court:

> Although Rule 15(b) is not directly applicable on summary judgment, it contemplates the resolution of the analogous issue raised here. If the rules would allow the amendment of pleadings at trial when the objecting party is not prejudiced and the amendment would facilitate resolution of the case on its merits, it seems appropriate to allow such an amendment on summary judgment, especially where the amendment does not raise an entirely new claim, but merely broadens its parameters in the pleadings. *See Rodriguez v. Ritchey,* 556 F.2d 1185, 1190 n. 14 (5th Cir.1977) (". . . it could be advanced that, where a case is in summary judgment posture, the allegations of the complaint and answer should be deemed amended to conform to the proof under [Rule] 15(b) before a court determines whether to grant judgment.").

*Gulf Group Holdings, Inc.*, 516 F. Supp. 2d at 1265.

The situation here is almost identical to that considered in *Dantzler, Hodges*, and *Gulf Group*. Like those plaintiffs, Appellants alleged facts sufficient to put Fairshare on notice of the claim: breach of fiduciary duty. And, as in those cases, discovery revealed additional facts supporting the claim asserted in the Amended Complaint. Those additional facts were elicited by Fairshare's very own corporate representative at deposition under Rule 30(b)(6) (Doc. 105 ¶¶ 7–8, & at 16–17), and were raised by Appellants: in the initial motion for class certification (Doc. 62 at 5–8), in the Second Amended Complaint (Doc. 69 at ¶¶ 14–24), and in the Amended

52

Motion for Class Certification (Doc. 82 at 7–8)—hence, Fairshare cannot reasonably claim surprise.

Rather, in opposing summary judgment, Appellants set forth uncontroverted evidence in support of their breach of fiduciary duty claim—a claim plead in the Amended Complaint, that survived dismissal, and was certified for class treatment for which notice was provided to approximately one million Class Members. Appellants supplied the evidence to support that claim, not to assert a wholly new one. Thus, Fairshare was on notice of the facts upon which Appellants relied. In short, the Amended Complaint alleges various facts that give rise to a breach of fiduciary duty claim; the "other instances of [breach of fiduciary duty, developed through the normal course of discovery,] are merely the natural by-product of the discovery process." *Dantzler*, 946 F. Supp. 2d at 1363-64.

By ignoring Appellants' evidence, the district court effectively, *sua sponte*, converted the motion for summary judgment into a motion to dismiss. This procedural anomaly ignores the prescribed manner and sequence by which the bona fides of a claim is tested under the Rules:

> Although a motion to dismiss for failure to state a claim sometimes may be converted into a motion for summary judgment, we know of no authority that allows for the reverse conversion of a summary judgment motion into a motion to dismiss for failure to state a claim. Just because a cucumber can be turned into a pickle does not mean that a pickle can be turned into a cucumber, and principles of

> sound case management strongly suggest that allowing
> such a reverse conversion here would be inappropriate.
> After all, the parties briefed and argued summary
> judgment, and judicial efficiency would have been best
> served by dealing directly with those arguments rather
> than avoiding them.

*Rios-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 24-26 (1st Cir. 2019) (footnote

omitted).

Moreover, the district court's irregular approach visits on litigants the very

inefficiencies the Rules are intended to prevent.

> [G]oing through a lengthy period of discovery only to
> ignore the fruits of the discovery process by focusing
> single-mindedly on the adequacy of the allegations of the
> complaint would make little sense in the mine-run of
> cases.  *Absent special circumstances or persuasive*
> *reasons (not present here), we see no justification for*
> *allowing a district court to travel back in time and train*
> *the lens of its inquiry on the bare allegations of the*
> *complaint while disregarding the compiled factual record*
> *upon which a summary judgment movant has elected to*
> *rely.*

*Rios-Campbell*, 927 F.3d at 26 (emphasis added) (citations omitted).

## CONCLUSION

The district court erred in dismissing Counts 2, 3, 4 and 5 of Appellants' Amended Complaint, *sua sponte* striking Appellants' Second Amended Complaint, and granting summary judgment in Appellee's favor. For all these reasons, the Court should reverse these rulings and remand this case to the district court for further proceedings.

Dated: June 17, 2022         Respectfully Submitted,

              */s/ John A. Yanchunis*
              John A. Yanchunis
              Patrick A. Barthle II
              MORGAN AND MORGAN
              201 N. Franklin Street, 7th Floor
              Tampa, Florida  33602
              Tel: (813) 202-7185
              Fax: (813) 222-4738

              Attorneys for Appellants

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 5(c) because, excluding the parts of the documents exempted by Fed. R. App. P. 32(f), this document contains 12,620 words.

Further, this document is proportionally spaced, has a typeface of 14 points and complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).


*/s/ John A. Yanchunis*
John A. Yanchunis

Counsel for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on June 17, 2022.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished using the appellate CM/ECF system.

/s/ John A. Yanchunis
John A. Yanchunis

Counsel for Appellant